1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Adam Steinbaugh, Cal. Bar No. 304829
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Telephone:    (215) 717-3473
Email:        adam@thefire.org

JT Morris, Tex. Bar No. 24094444*
Zachary T. Silver, D.C. Bar No. 1742271*
FOUNDATION FOR INDIVIDUAL RIGHTS
  AND EXPRESSION
700 Pennsylvania Avenue, SE; Suite 340
Washington, D.C. 20003
Telephone:    (215) 717-3473
Email:        jt.morris@thefire.org
Email:        zach.silver@thefire.org

David Loy, Cal. Bar No. 229235
David Snyder, Cal. Bar No. 262001
FIRST AMENDMENT COALITION
534 4th Street, Suite B
San Rafael, CA 94901-3334
Telephone:    (415) 460-5060
Email:        dloy@firstamendmentcoalition.org
Email:        dsnyder@firstamendmentcoalition.org

*Attorneys for Plaintiffs*
* Pro hac vice *application forthcoming*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FIRST AMENDMENT COALITION, VIRGINIA LAROE, and EUGENE VOLOKH, | Civil Case No. 3:24-cv-08343 |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR CIVIL-RIGHTS VIOLATIONS** |
| v. | |
| DAVID CHIU, in his official capacity as City Attorney of San Francisco; and ROB BONTA, in his official capacity as Attorney General of California, | |
| Defendants. | |

— 1 —
COMPLAINT

## **<u>INTRODUCTION</u>**

1.      California Penal Code § 851.92(c) prohibits almost any person—whether journalist, advocate, activist, lawyer, victim, or witness—from disseminating any information "relating to" a sealed arrest record.

2.      In doing so, Penal Code § 851.92(c) forbids speaking or writing about information from sealed arrest records even by those who learn of that arrest through lawful means, like reading records the government provides, reading about the arrest in the newspaper, or even witnessing the arrest.

3.      But the First Amendment does not permit the government to punish a speaker for conveying information of public concern the speaker already lawfully possesses.

4.      The First Amendment prohibits such punishment even if the information might be embarrassing to an influential member of the community.

5.      Penal Code § 851.92(c), California's anti-dissemination statute, ignores those clear First Amendment limits, imposing a civil penalty of up to $2,500 for each utterance—a penalty the Attorney General or any City Attorney can enforce.

6.      By itself, the anti-dissemination statute threatens a host of protected speech on important public issues.

7.      Presently, the San Francisco City Attorney is using the anti-dissemination statute to chill journalists and publishers from reporting on the arrest of the now-former CEO of a controversial tech company. After the San Francisco Police Department shared that information in response to a public record request, the CEO enlisted the City Attorney in a joint effort to try to put the horse back in the barn by having the City Attorney's office repeatedly send letters, "pursuant to" the anti-dissemination statute, demanding censorship of articles about the arrest.

8.      Plaintiffs are a First Amendment advocacy group that champions press rights, its director of public advocacy, and the publisher of a well-known legal blog who frequently writes about censorship campaigns like the one now being undertaken by the CEO and City Attorney. Plaintiffs credibly fear the City Attorney will enforce the anti-dissemination

statute's civil penalty against them for publishing the same materials the City Attorney has targeted in recent weeks.

9.    Plaintiffs therefore bring this action to enjoin Defendants from enforcing the anti-dissemination statute against speech the First Amendment undoubtedly protects.

## THE PARTIES

### *Plaintiffs*

10.    Plaintiff First Amendment Coalition ("FAC") is a San Rafael-based, nonpartisan, public-interest nonprofit dedicated to protecting and promoting a free press, freedom of expression, and the people's right to know.

11.    FAC advocates for expressive freedom, including through public commentary and open letters.

12.    Plaintiff Virginia LaRoe is FAC's Advocacy Director, known professionally as Ginny LaRoe. In that role, LaRoe and other staff speak in the press about current threats to the free press, including through policies like the anti-dissemination statute.

13.    Plaintiff Eugene Volokh is a Senior Fellow at the Hoover Institution at Stanford University, and a Professor of Law Emeritus at UCLA School of Law. He specializes in the First Amendment and related topics, and routinely publishes and comments on access to government records, defamation, and anonymous litigants.

14.    For over 20 years, Volokh has edited and written a legal blog, *The Volokh Conspiracy*, which is now hosted by *Reason Magazine* at https://reason.com/volokh.

### *Defendants*

15.    Defendant David Chiu is the elected City Attorney for the City and County of San Francisco. In this role, he "[r]epresent[s] the City and County in legal proceedings." S.F. Charter § 6.102(1). Additionally, "[w]henever a cause of action exists in favor of the City and County," he must "commence legal proceedings when such action is within [his] knowledge . . . or when directed to do so by the Board of Supervisors, except for the collection of taxes and delinquent revenues." *Id.* § 6.102(3); *see also* Cal. Gov. Code § 41803.

16.    Defendant Chiu is a final policymaker for the City of San Francisco, which has made the purposeful decision to enforce California Penal Code § 851.92(c).

17.    Defendant Rob Bonta is the elected Attorney General of California. Under Article 5, Section 13 of the California Constitution, he is the "chief law officer of the State," with the duty to "see that the laws of the State are uniformly and adequately enforced." This provision grants him "direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law." *Id.*; *see* Cal. Gov't Code §§ 12524, 12560.

18.    California Penal Code § 851.92(c) provides that its civil penalty may be imposed by "a city attorney, district attorney, or the Attorney General," authorizing each of the Defendants to seek a civil penalty against any of the Plaintiffs for their intended speech.

19.    All Defendants are sued in their official capacities only.

## JURISDICTION

20.    This action arises under the First and Fourteenth Amendments to the United States Constitution. It is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201–02.

21.    Plaintiffs seek declaratory and injunctive relief against the Defendants.

22.    Accordingly, this Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(4).

23.    Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(1) because at least one of the Defendants resides in this District and all Defendants reside in California.

24.    Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this District.

## DIVISIONAL ASSIGNMENT

25.    Assignment to the San Francisco Division is appropriate under Civil Local Rule 3-2(c)–(d) because a substantial part of the events giving rise to this action, including the

San Francisco City Attorney's threats to enforce the anti-dissemination statute, occurred in the City and County of San Francisco.

## **FACTUAL ALLEGATIONS**

*California's anti-dissemination statute.*

26.    California Penal Code § 851.92 specifies certain measures that take effect when arrest records are sealed pursuant to other statutes.

27.    When a court grants a petition to seal records, the statute requires criminal justice agencies to stamp arrest records with the words "ARREST SEALED: DO NOT RELEASE OUTSIDE THE CRIMINAL JUSTICE SECTOR." Cal. Penal Code § 851.92(b)(3).

28.    Criminal justice agencies are permitted to continue to "furnish" the record to other criminal justice agencies and to discuss "in open court and in unsealed court filings" the information relating to a sealed arrest. Cal. Penal Code § 851.92(b)(6).

29.    The statute broadly defines "criminal justice agency" to include agencies involved in law-enforcement, courts, and individuals within the criminal justice system, including police, investigators, and other law-enforcement officers. Cal. Penal Code § 851.92(d)(4).

30.    Section 851.92(c) provides for a civil penalty against any entity or person other than a "criminal justice agency or the person whose arrest was sealed" that disseminates information relating to a sealed arrest, by providing that:

> Unless specifically authorized by this section, a person or entity, other than a criminal justice agency or the person whose arrest was sealed, *who disseminates information relating to a sealed arrest* is subject to a civil penalty of not less than five hundred dollars ($500) and not more than two thousand five hundred dollars ($2,500) per violation. The civil penalty may be enforced by a city attorney, district attorney, or the Attorney General. This subdivision does not limit any existing private right of action. A civil penalty imposed under this section shall be cumulative to civil remedies or penalties imposed under any other law.

Cal. Penal Code § 851.92(c) (emphasis added).

*Media coverage of a tech CEO at the center of a controversy over involvement with U.S. intelligence agencies.*

31.     A San Francisco-based company developed a phone app that allowed companies to pay users around the globe to collect information.

32.     After the company hired a new CEO, it began to market its services and app to military and intelligence agencies in Washington, D.C., as a means of gathering intelligence in foreign countries and hostile areas through crowdsourcing (*i.e.*, gathering information from a significant number of users, often unpaid or marginally compensated).

33.     The CEO and the company drew significant public attention due to this practice, including news reports from national media outlets in the United States and the United Kingdom.

34.     A book about the intersection of intelligence agencies and Silicon Valley, published in 2024 by one of the largest publishers in the United States, dedicated a chapter to the CEO and the company.

35.     The CEO has a security clearance issued by the United States Department of Defense.

36.     Persons with a security clearance are required to self-report any arrest, as embarrassing arrests can be exploited by other states' intelligence agencies to gain access to sources and information. Nat'l Security Adjudicative Guidelines, Security Exec. Agent Directive 3, at G(2)(c) (effective June 8, 2017), https://www.dni.gov/files/NCSC/documents/Regulations/SEAD-3-Reporting-U.pdf.

*After the San Francisco Police Department releases an arrest report in response to a public record request, the CEO takes action to suppress a journalist's reporting.*

37.     In or about February 2022, the CEO petitioned a California state court to seal an arrest report documenting his arrest.

38.     The California state court granted the CEO's petition to seal the arrest.

39.     Nevertheless, the San Francisco Police Department subsequently released the arrest report in response to a public record request under the California Public Records Act.

40.     On information and belief, the San Francisco Police Department failed to mark the arrest report with the stamp required by California Penal Code section 851.92(b)(3): "ARREST SEALED: DO NOT RELEASE OUTSIDE THE CRIMINAL JUSTICE SECTOR."

41.     In the fall of 2023, a journalist posted a report on his website disclosing the arrest, sharing a redacted copy of the San Francisco Police Department arrest report.

42.     The journalist received the arrest report unsolicited from a confidential source.

43.     The journalist had repeatedly written about the company and its CEO, and their relationships with intelligence agencies, before writing about the arrest report.

44.     On information and belief, the journalist does not reside in the City of San Francisco.

45.     Before publishing his report, the journalist contacted the San Francisco Police Department, which confirmed the arrest report as genuine.

46.     The San Francisco Police Department did not inform the journalist that the arrest report had been sealed.

47.     The arrest report the journalist published did not bear the "ARREST SEALED" stamp required by California Penal Code section 851.92(b)(3).

48.     Several weeks after the journalist wrote about the arrest report, the CEO resigned from the company.

49.     After the journalist published his report, he also reported that a person claiming to act on behalf of the CEO:

        a.    Offered to pay the journalist to remove his reporting in exchange for money;

        b.    Contacted a company hosting the journalist's website, claiming the posts violated the host's policies; and

        c.    Sent a Digital Millennium Copyright Act notice claiming a copyright in the San Francisco Police Department arrest report and demanding its removal.

50.    More than one year after the journalist's report, the now-former CEO filed a pseudonymous state court action against the journalist and two companies that host his website.

***At the CEO's behest, the San Francisco City Attorney repeatedly pressures the journalist and his webhost, citing the anti-dissemination statute.***

51.    Shortly before the now-former CEO filed his lawsuit, an attorney acting on his behalf contacted the office of the San Francisco City Attorney.

52.    On September 19, 2024, a Deputy City Attorney sent a letter to one of the companies hosting the journalist's website.

53.    The deputy sent the September 19 letter "[p]ursuant to California Penal Code section 851.92(c)."

54.    The September 19 letter stated that "we expect you will immediately remove the Incident Report and its contents from your website."

55.    The September 19 letter demanded that the company "alert us when the documents [*sic*] and its contents have been taken down from your website by no later than September 23, 2024."

56.    The September 19 letter instructed the company to "refrain from publishing this material in the future."

57.    When the company did not do so, the former CEO personally contacted the Deputy City Attorney to solicit "continued efforts in notifying" the company.

58.    On October 3, 2024, an attorney for the former CEO sent a letter to the City Attorney, Defendant David Chiu.

59.    That same day, Chiu's deputy sent a second letter to the company.

60.    The second letter to the company complained that the company's "inadequate" response fell short of what "court orders" required, namely removal of both the arrest report and also "posts related to" the arrest report.

61.    On that same day, the Deputy City Attorney sent a third letter concerning the matter to an attorney for the journalist.

62.    The Deputy City Attorney sent the third letter "[p]ursuant to" the anti-dissemination statute.

63.    In the third letter, the Deputy City Attorney warned that "we expect" removal of "this material" from the internet "immediately."

64.    On October 4, 2024, the ex-CEO's attorney emailed the Deputy City Attorney, sharing his "hope that your office will continue to help us in our efforts to enforce these various laws designed to protect" the ex-CEO.

***The anti-dissemination statute is chilling The First Amendment Coalition's efforts to protect freedom of the press through public advocacy and commentary.***

65.    Plaintiff FAC and its Director of Advocacy, Plaintiff Virginia "Ginny" LaRoe, engage in public advocacy to defend the First Amendment rights of the press and public.

66.    FAC and LaRoe frequently share their analyses of current events and policies with the public, including through writing about these issues on FAC's own website or in opinion pieces published in media outlets, in open letters, and in position papers.

67.    FAC is based in San Rafael and primarily focuses its advocacy efforts on threats to expressive freedom and transparency in California.

68.    On behalf of FAC, LaRoe co-authored an opinion piece critical of the CEO's censorship campaign and the City Attorney's participation in it.

69.    The opinion piece contains information about the sealed arrest record, which has been reported on publicly, both by the journalist and at least one other news outlet.

70.    A San Francisco newspaper published the opinion piece.

71.    FAC and LaRoe's intended audience is primarily based in the Bay Area, and San Francisco residents make up a substantial portion of the readership of the opinion piece and their similar future commentary.

72.    FAC and LaRoe are concerned that they will be subject to a civil penalty for their published opinion piece.

73.     FAC and LaRoe are also concerned that they will be subject to a civil penalty (whether for the first time or in addition to a penalty due to their published piece) for future speech.

74.     FAC and LaRoe are further chilled from republishing or commenting on the CEO's censorship campaign and the City Attorney's participation in it because the anti-dissemination statute provides for a civil penalty for each dissemination. Cal. Penal Code § 851.92(c).

75.     On behalf of FAC, LaRoe has drafted and would like to send a public letter to San Francisco City Attorney David Chiu and to other officials criticizing the existence of and application of California Penal Code section 851.92(c) to the journalist.

76.     FAC and LaRoe intend for the drafted letter to reach a wider audience in San Francisco and California more broadly.

77.     The letter LaRoe drafted includes more detailed information about the sealed arrest report that was not included in the opinion piece previously published, emphasizing the manner in which the statute frustrates reporting on matters of public concern.

78.     FAC and LaRoe are similarly situated to the journalist who reported on the CEO's censorship campaign, in that they have published and intend to again publish the same information that drew multiple demand letters from the City Attorney.

79.     But for the anti-dissemination statute, FAC and LaRoe would send and publish the open letter to the San Francisco City Attorney, as well as publish additional information and content on their website, in media outlets, and on social media, containing information about the sealed arrest report and directed to a San Francisco audience.

80.     FAC and LaRoe are also concerned that they will be asked for comment on the First Amendment issues raised by the dispute and will be unable to provide their accurate opinion as to the facts and the law.

***The anti-dissemination statute prevents Volokh from publishing articles and the sealed arrest report.***

81.     Plaintiff Volokh publishes an online legal blog, the *Volokh Conspiracy*, which is affiliated with *Reason Magazine*.

82.     Volokh frequently writes about the First Amendment and public access to court records. Among other topics, he frequently covers in particular:

> a.     Efforts to remove content from the internet through the use of court orders, copyright takedown notices, and similar complaints;
>
> b.     Anonymous or pseudonymous litigation (*i.e.*, suits brought by John or Jane Does);
>
> c.     Defamation lawsuits involving peculiar or dubious theories; and
>
> d.     The use of civil harassment injunctions to suppress speech directed to the public.

83.     Volokh routinely posts and links to source documents to inform his readers and to assure them that his accounts are accurate and credible.

84.     Plaintiff Volokh thus frequently writes about, and posts source documents relating to, matters like the actions of the ex-CEO and the City Attorney described in this Complaint.

85.     Volokh wants to write in detail about the lawsuit and controversy related to the journalist's publication about the CEO, including the CEO's name and details from the arrest.

86.     Consistent with his past practice, Volokh wants to link to the publicly available arrest report, or to publish it in the event it is removed from other sources.

87.     But for the anti-dissemination statute, Volokh would have already written about the events described in this Complaint and shared a copy of the publicly available arrest report.

88.     A substantial number of readers of the *Volokh Conspiracy*, where Volokh intends to disseminate this information, reside in the City of San Francisco.

89.     Volokh's commentary will criticize the conduct of San Francisco officials in threatening to enforce the anti-dissemination statute.

90.     But Volokh is not publishing anything about the lawsuit, controversy, or arrest report, because he is concerned that he may be subject to the anti-dissemination statute's civil penalty.

91.     Moreover, because Volokh is a California attorney, he does not want to violate the California Penal Code, particularly considering Rule 8.4(d) of the California Rules of Professional Conduct, which makes it "professional misconduct" to "engage in conduct that is prejudicial to the administration of justice."

92.     While Volokh believes that disclosing lawfully obtained sealed arrest records is protected by the First Amendment and consistent with the administration of justice, the anti-dissemination statute appears to embody the contrary view. Volokh wishes to challenge the law before it is enforced rather than being required to risk enforcement as the sole means of seeking relief.

**INJURY TO PLAINTIFFS AND TO THE PUBLIC**

93.     Plaintiffs are chilled from writing, publishing, or speaking about matters of public concern arising from the CEO's censorship campaign and the City Attorney's support of that campaign.

94.     Because of the anti-dissemination statute and the City Attorney's credible threats to enforce the statute, each Plaintiff has refrained from publishing articles or information about the arrest (and related controversy) or otherwise limited their public comments on the matter despite wanting to publish materials that contain information relating to the sealed report.

95.     That chill inures to the detriment of not only Plaintiffs but also the general public, which benefits from the informed commentary of scholars and advocates, like Plaintiffs, with expertise in these matters of public concern.

96.     The chill also extends to others who wish to disseminate lawfully obtained information about sealed arrests, including the sealed arrest at issue here. Journalists, crime

victims and their advocates, commentators on court proceedings, and criminal justice researchers are just some of the many who engage in the protected speech the anti-dissemination statute threatens.

97.    The statute's complete lack of constitutional guardrails vests unfettered discretion in officials like Defendants to enforce the statute's civil penalties, creating a tool for officials to wield those penalties to silence unfavorable facts about the government or those with whom it works, as the City Attorney's efforts here show.

98.    That risk is illustrated by the City Attorney's efforts to suppress information that has been publicly available for some time and, among other things, (a) reveals that the San Francisco Police Department (an agency for which the City Attorney provides legal representation) mishandled information in violation of a court order and state law; and (b) is embarrassing to a local executive.

99.    That threat of arbitrary enforcement only deepens the statute's chilling effects on a range of reporting on matters about sealed arrests, as members of the public are left to guess whether they will face financial penalties for truthfully reporting newsworthy facts that they lawfully acquire.

100.    The statute's chill, which the City Attorney's threats have amplified, is currently causing irreparable harm. News reporting concerns *current* events, and the time to litigate the constitutionality of the statute through trial, if necessary, will continue to chill Plaintiffs, and others like them, from reporting on developments in this or similar disputes.

## CLAIMS

### FIRST CLAIM
### First Amendment Violation—Content-Based Speech Regulation
### (42 U.S.C. § 1983)
### (Facial and As-Applied Challenge Against All Defendants in their Official Capacities)

101.    Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

102.    The First Amendment generally prohibits state statutes that target speech based on the speech's content.

103.    By imposing civil penalties for "disseminating information," the statute targets speech—and only speech.

104.    And by prohibiting speech that is "related to a sealed arrest report," Cal. Penal Code § 851.92(c) penalizes speech based on its content, targeting the subject matter of the speech and requiring reference to the speech's content to determine whether it falls within the statute.

105.    Because this content-based restriction penalizes the "dissemination" of lawfully obtained "information related to a sealed arrest report," it targets an expansive range of speech about matters of public concern, all of which the First Amendment protects.

106.    Cal. Penal Code § 851.92(c) is presumptively unconstitutional on its face and subject to strict scrutiny, to the extent it regulates disseminating lawfully obtained information about sealed arrests. The statute violates the First Amendment in all of its applications to that range of expressive activity.

107.    Likewise, Cal. Penal Code § 851.92(c) is presumptively unconstitutional as applied to each Plaintiff.

108.    The statute threatens Volokh's protected speech because he intends to publish commentary on a pending civil lawsuit and controversy based on a sealed arrest report involving a defense contractor with a federal security clearance, consistent with his regular commentary on disputes involving government records, the First Amendment, and lawsuits targeting exercises of free speech. Volokh intends to include a lawfully obtained copy of the sealed arrest report that exists in the public domain and to discuss the report's contents.

109.    The statute threatens FAC's and LaRoe's protected speech, because they intend to publish and comment on the same civil lawsuit and controversy as part of their regular advocacy for the First Amendment, press freedoms, and government transparency. As part of their publication and commentary, FAC and its staff may need to share a publicly available copy of the sealed arrest report and will need to be able to discuss its contents.

110.    Cal. Penal Code § 851.92(c) fails strict scrutiny.

111.    The State has no compelling governmental interest in penalizing the dissemination of lawfully obtained information about a sealed arrest that involves a matter of public concern.

112.    Nor is the statute the least restrictive means of achieving any government interest.

113.    Alternatively, if the State's interest lies in regulating how consumer reporting agencies share sealed arrest information, as asserted in the statute's legislative history, a blanket penalty on *anyone* who shares that information—including the press, scholars, advocates, and crime watchdogs—is far from the least restrictive means of achieving that interest.

114.    If the State's interest lies in protecting the reputation of arrestees, it has already passed and enforced regulations requiring government officials to safeguard sealed information. Yet with Cal. Penal Code § 851.92(c), the State exempts those officials from civil penalty when they breach their duty.

115.    Cal. Penal Code § 851.92(c) is not the least restrictive means to advance any governmental interest, let alone narrowly tailored to address that interest. For instance, the statute lacks any element requiring intent to use sealed arrest information for unlawful means, and it lacks any exception for journalistic and similarly protected activities centered on publishing or sharing lawfully acquired information about sealed arrests.

116.    Because Cal. Penal Code § 851.92(c) fails strict scrutiny in every or almost every application to the dissemination of lawfully acquired sealed arrest information, it is facially unconstitutional as to that range of First Amendment protected activity.

117.    Because Cal. Penal Code § 851.92(c) fails strict scrutiny as applied to Plaintiffs' protected First Amendment activities, it also violates the First Amendment as applied to each of them.

118.    There is a substantial threat that Defendants will enforce Cal. Penal Code § 851.92(c) now and in the future.

119.    Because California Penal Code § 851.92(c) is a content-based regulation on protected speech, Plaintiffs are suffering and will continue to suffer irreparable injury, including loss of their First Amendment right to publish lawfully gathered information on matters of public concern and their due process right to have sufficient notice of the statute's reach.

**SECOND CLAIM**
**First Amendment Violation—Facial Overbreadth**
**(42 U.S.C. § 1983)**
**(Against All Defendants in their Official Capacities)**

120.    Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

121.    Cal. Penal Code § 851.92(c) prohibits a substantial amount of protected expression, under the pain of civil penalty.

122.    Cal. Penal Code § 851.92(c) prohibits "any person or entity" from "disseminat[ing] information relating to a sealed arrest."

123.    Cal. Penal Code § 851.92(c) does not include an intent, recklessness, or negligence requirement.

124.    Thus, Cal. Penal Code § 851.92(c) applies to an expansive range of speech that addresses a matter of public concern, without regard to the speaker's state of mind or whether the speaker lawfully obtained the information disseminated.

125.    If Cal. Penal Code § 851.92(c) has any plainly legitimate sweep, it is exceedingly narrow, applying to:

    a.    persons who obtain information through independently unlawful conduct like theft or blackmail, then disseminate it; and

    b.    the few non-exempt government employees who obtain information through their employment and then disseminate it.

126.    By excluding "criminal justice agencies" from the statute's reach, the statute excludes government employees and contractors who fail to safeguard sealed arrest

information from the statute's civil penalties, in turn excluding potentially constitutional applications from the statute's sweep.

127.    Cal. Penal Code § 851.92(c) exempts from the civil penalty (1) "the person whose arrest was sealed" or (2) a "criminal justice agency," defined to include:

a.    Any "agency at any level of government that performs, as its principal function, activities relating to" criminal law-enforcement (§ 851.92(d)(4));

b.    California state courts (§ 851.92(d)(4)(A));

c.    Police officials, police officers, probation officers, parole officers (§ 851.92(d)(4)(B), (F), (G) & (J));

d.    Any person employed by the investigation division of the Department of Consumer Affairs or the state Dental Board (§ 851.92(d)(4)(B) & § 830.3(a));

e.    Prosecutors, including district attorneys and city attorneys (§ 851.92(d)(4)(C)–(E));

f.    Criminal defense attorneys, including public defenders (§ 851.92(d)(4)(H)); and

g.    Investigators employed by prosecutors or defense attorneys (§ 851.92(d)(4)(I)).

128.    Whatever legitimate sweep the statute has—if any—does not approach the number of the statute's abundant unconstitutional applications, which vastly outweigh the lawful applications.

129.    The statute ensnares not only Plaintiffs' protected speech, but also the protected speech of other members of the press, criminal justice and government transparency advocates, academics, legal commentators, community watchdogs, witnesses, victims, and anyone else who lawfully obtains information about a sealed arrest and wishes to share it. And as the crime and courts pages of any California newspaper or online news source show, publishing information about arrests is a routine occurrence in California and elsewhere.

130.    The statute is so unbounded that it prohibits sharing information about a sealed arrest that has made its way into the public domain.

131.    By way of example, the statute's plain language would (and does) reach:

    a.    Plaintiffs' republication or description of an arrest report obtained from public reporting;

    b.    A journalist's publication of a sealed arrest report negligently provided to her by a police department in response to a public record request;

    c.    The republication (for example, by LexisNexis or Westlaw) of a published decision of an appellate court concerning the underlying arrest;

    d.    A newspaper's editorial about a political figure whose arrest was widely publicized before it was sealed;

    e.    Statements by a victim of or witness to a crime to friends, family, or a mental health professional concerning the circumstances of the now-sealed arrest;

    f.    Statements by a victim or a witness to a crime to a journalist, and the journalist's publication of that account, concerning the circumstances of the now-sealed arrest; and

    g.    A social media user's post sharing an article concerning the circumstances of a sealed arrest.

132.    California's choice to deliberately shrink the potentially legitimate sweep of the statute underscores how that sweep pales in comparison to the swath of protected speech the statute prohibits.

133.    In sum, Cal. Penal Code § 851.92(c) serves chiefly to penalize and chill protected speech and lacks any plainly legitimate sweep.

134.    Because of California Penal Code § 851.92(c)'s unconstitutional overbreadth, Plaintiffs are suffering and will continue to suffer irreparable injury, including being deprived of their First Amendment right to publish lawfully gathered information on matters of public concern.

**THIRD CLAIM**
**First and Fourteenth Amendment Violation—Void for Vagueness**
**(42 U.S.C. § 1983)**
**(Against All Defendants in their Official Capacities)**

135.   Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

136.   California Penal Code § 851.92(c) punishes any person or entity who "disseminates information related to a sealed arrest," but in doing so fails to provide ordinary persons with fair notice of what the statute prohibits.

137.   For example, the statute requires reasonable people to guess whether "information" is "related to" an arrest, including whether it encompasses, among other things:

      a.    The facts and circumstances of the arrest, as known to the witnesses who reported it;

      b.    The facts and circumstances of the arrest, as known to people who learned of them—from witnesses, victims, or media reports—before the report was sealed;

      c.    The facts and circumstances of the arrest, as known to people who learned of them—from witnesses, victims, or media reports—after the report was sealed;

      d.    Information disclosed "in open court and in unsealed court filings" by prosecutors, court staff, or a judge, as the statute permits (Cal. Penal Code § 851.92(b)(6));

      e.    Information voluntarily made public by the arrestee (Cal. Penal Code § 851.92(c) (exempting dissemination by "the person whose arrest was sealed"));

      f.    Information disclosed in open court proceedings, such as in the civil action filed by the CEO;

      g.    Information inadvertently or purposefully disclosed to the public by government officials in contravention of the statute; or

      h.    The existence of a sealed report.

138.   What's more, "disseminates information related to a sealed arrest" invites Defendants, and other district attorneys and city attorneys, with unbridled discretion to

impose civil penalties on the press, scholars, concerned citizens, and many others—and in arbitrary and discriminatory ways.

139.   In its vagueness, California Penal Code § 851.92(c) violates the First Amendment and the Due Process Clause of the Fourteenth Amendment.

140.   And because California Penal Code § 851.92(c) targets speech, its vagueness only heightens its chilling effects on protected speech, including the freedom to publish lawfully obtained information on matters of public concern.

141.   The statute also fails to define the operational term "related to a sealed arrest," which is broad, ambiguous, and lacks objective meaning.

142.   To that end, "disseminates information related to a sealed arrest" also lacks objective meaning. Instead, it is subject to open-ended interpretation, as ordinary people can disagree on what it means.

143.   As City Attorney Chiu's threats to enforce California Penal Code § 851.92(c) show, Defendants can and will enforce the statute in arbitrary and discriminatory ways, including against those who may lawfully gain access to and publish sensitive or embarrassing newsworthy information about the government or about powerful figures having sway over government officials.

144.   Having no way to discern the limits of California Penal Code § 851.92(c) or its enforcement, Plaintiffs, and others like them, face a no-win choice: risk civil penalty by exercising their First Amendment rights, or self-censor to avoid those penalties.

145.   In all cases, the chill on protected speech from the statute's vagueness, and the unfettered discretion it gives Defendants and other authorized officials, are substantial and ongoing.

146.   Because of California Penal Code § 851.92(c)'s unconstitutional vagueness, Plaintiffs are suffering and will continue to suffer irreparable injury, including being deprived of their First Amendment right to publish lawfully gathered information on matters of public concern and their due process right to have sufficient notice of the statute's reach.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request this Court enter judgment against Defendants and issue the following relief:

A.  Declare California Penal Code § 851.92(c) unconstitutional, facially and as applied to Plaintiffs, under the First and Fourteenth Amendments;

B.  Issue a preliminary injunction and permanent injunction enjoining Defendants (including all of their officers, agents, servants, employees, attorneys, and other persons in active concert or participation with Defendants) from enforcing California Penal Code § 851.92(c) as applied to Plaintiffs' speech;

C.  Issue a preliminary injunction and permanent injunction enjoining Defendants (including all of their officers, agents, servants, employees, attorneys, and other persons in active concert or participation with Defendants) from enforcing California Penal Code § 851.92(c) against the dissemination of any lawfully obtained information about a sealed arrest record;

D.  Award Plaintiffs their attorneys' fees under 42 U.S.C. § 1988;

E.  Award Plaintiffs their costs; and

F.  Award such other relief as the Court deems appropriate.


DATED: November 22, 2024          Respectfully submitted,

By: /s/ Adam Steinbaugh

JT Morris, Tex. Bar No. 24094444*          Adam Steinbaugh, Cal. Bar No. 304829
Zachary Silver, D.C. Bar No. 1742271*      FOUNDATION FOR INDIVIDUAL
FOUNDATION FOR INDIVIDUAL                       RIGHTS & EXPRESSION
     RIGHTS & EXPRESSION                   510 Walnut Street, Suite 900
700 Pennsylvania Ave. SE, Suite 340        Philadelphia, PA 19106
Washington, D.C. 20003                     Tel:       (215) 717-3473
Tel:       (215) 717-3473                  Cell:      (562) 686-6990
Fax:       (215) 717-3440                  Fax:       (215) 717-3440
Email:    jt.morris@thefire.org            Email:    adam@thefire.org
Email:    zach.silver@thefire.org
                                           David Loy, Cal. Bar No. 229235
                                           David Snyder, Cal. Bar No. 262001
                                           FIRST AMENDMENT COALITION
                                           534 4th Street, Suite B

San Rafael, CA 94901-3334
Tel:      (415) 460-5060
Email:    dloy@firstamendmentcoalition.org
Email:    dsnyder@firstamendmentcoalition.org

Attorneys for Plaintiffs
FIRST AMENDMENT COALITION,
VIRGINIA LAROE, and EUGENE
VOLOKH

* Pro hac vice *application forthcoming*.

COMPLAINT